IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK19-80064 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., et al.[1], | ) ) | (Jointly Administered) |
| | ) | CHAPTER 11 |
| Debtor(s). | ) | |

## ORDER

Pursuant to the terms of the Scheduling Order regarding certain administrative claims (Fil. #1656), this Order constitutes the Initial Decision on the Initial Legal Issues described therein.[2] A hearing was held on August 6, 2019, on the Initial Legal Issues regarding Debtors' First Omnibus Response and Objection to Requests for Allowance of Administrative Expenses (Fil. #1386) and all referenced Requests for Allowance of Administrative Expenses (Filing #s 718, 744, 749 amended at 1711, 755, 763, 778, 783, 794, 795, 796, 797, 800, 801 (and amendment at Fil. No. 1514), 802

---

[1] The Debtors in these Chapter 11 cases are:
- Specialty Retail Shops Holding Corp.;
- Pamida Stores Operating Co., LLC;
- Pamida Transportation LLC;
- Penn-Daniels, LLC;
- Place's Associates' Expansion, LLC;
- Retained R/E SPE, LLC;
- ShopKo Finance, LLC;
- ShopKo Gift Card Co., LLC;
- ShopKo Holding Company, LLC;
- ShopKo Institutional Care Services Co., LLC;
- ShopKo Optical Manufacturing, LLC;
- ShopKo Properties, LLC;
- ShopKo Stores Operating Co., LLC;
- SVS Trucking, LLC.

The cases have been procedurally consolidated and are being jointly administered under the case caption listed above.

[2] The Initial Legal Issues are: (a) whether parties are entitled to immediate payment of allowed administrative expense claims other than as set forth in the Confirmation Order; (b) whether landlords are entitled to administrative expense claims for stub rent; (c) whether landlords are entitled to administrative expense claims for the prorated portion of base rent or additional rent items (e.g. taxes, utilities, etc.) billed or payable post-rejection but attributable to the post-petition/pre-rejection period; and (d) whether landlords are entitled to administrative expense claims for additional rent items attributable to the pre-petition period that become due or payable post-rejection.

(and amendment at Fil. #1516), 803, 807, 808, 811, 812, 815, 816, 817, 821, 824, 827, 828, 829 (and supplement at Fil. No. 1089), 831 amended at Fil. No. 1626, 832, 833 (and amendment at Fil. No. 1515), 838, 839, 841, 842, 843, 845, 846, 847, 848, 849, 850, 851, 852, 854, 855, 857, 858, 861, 864, 870, 873, 875, 876, 880, 883, 889 amended at 1772, 890, 910, 995, 996, 1004, 1066,1067, 1214, 1373 amended at 1771, 1378, 1400, 1414, 1424 ,1476, 1531, 1535, 1536, 1548, 1564, 1577).

Kevin McClelland represents Debtors; Evan Hollander represents landlord Column Financial, Inc.; Katie Mason represents landlords Flintlock Capital, LLC, Robin Menasha, LLC, RMD Menasha, LLC, E&A Menasha, LLC and Genna Menasha; Robert LeHane represents landlords Realty Income Corporation, National Retail Properties, Haile Tekle and Hiwot Tekle, St. Croix, LLC and the Halbert Family Trust; R.J. Shortridge represents landlords CHL Neenah LLC, CHL Winona LLC, East Dakota Properties, Jubilee Family Investments, LLC, L & S Properties of Webster LLC, L & S Properties of Redfield, LLC, L & S Properties of Milbank LLC, Theodore A. & Evangeline Laliotis, Trustees for the Theodore A. and Evangeline Laliotis 2012 Revocable Trust, SHOPKODELL LLC, SHOPKOCHAM LLC, Pelstar Kimball, LLC, R. Lewis & R. Lewis Brillion, Inc., Stettinger Enterprises, Ltd., and The Christensen Corporation; and Trev Peterson represents landlords Patton Group Limited, Quincy 28-13, LLC, Corvalis WA LLC, Haar Properties LLC, Thompson Associates Corporation and the stalking horse bidder Cool Investment.

### *Background*

The Debtors are objecting to administrative expense claims filed by certain landlords for lease obligations for post-petition "stub rent,"[3] real estate taxes, and related expenses of occupancy on the Debtors' stores. The leases require the Debtors to make monthly rental payments on the first of each month. The petition date in this case was January 16, 2019, so the January rent was due pre-petition. The claims for stub rent concern the period between January 16 and January 31, 2019.

These claims are based on §§ 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code. Under § 365(d)(3), a Chapter 11 debtor must timely perform all obligations of the debtor under an unexpired lease of non-residential real property until such time as the lease is assumed or rejected. Section 503(b)(1)(A) gives a creditor an allowed administrative expense claim for "the actual, necessary costs and expenses of preserving the estate[.]" The Eighth Circuit Court of Appeals has issued two opinions that potentially affect the issues presented in this case: *Reiter v. Wedemeier (In re Wedemeier)*, 237 F.3d 938 (8th Cir. 2001) and *Burival v. Roehrich (In re Burival)*, 613 F.3d 810 (8th Cir. 2010).

---

[3]The rent at issue includes regular monthly post-petition lease payments as well as "stub rent," which is "the amount due a landlord for the period of occupancy and use between the petition date and the first post-petition rent payment." *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 815 (3d Cir. 2010).

*Wedemeier*

In *Wedemeier*, the debtors farmed leased land on which they owed semi-annual rent payments. The payments were due March 1 and December 1 under one lease, and March 1 and November 15 under the other lease. They paid the March installment under one of the leases, but did not make any other payments. The debtors planted their crops in May, filed a Chapter 7 bankruptcy petition in June, and remained in possession of the leased land through harvest in the fall. The trustee did not assume the leases, so they were deemed rejected in August.

After the leases were deemed rejected, a secured lender commenced an adversary proceeding to determine the priority of the various interested parties in the growing crops. In a court-approved settlement agreement, the debtors, the trustee, and the bank stipulated (1) that debtors would be employed by the trustee to harvest the growing crops at the standard rate for such work; (2) that $34,538.25 in crop proceeds, representing the cash rent due the landlords, would be escrowed; (3) that debtors and the bank would waive all rights to the escrowed funds; and (4) that the rights of the trustee and landlords would be preserved subject to later determination by the court.

The trustee later filed a motion for summary judgment regarding various issues between the trustee and the landlords, including the issue of whether the landlords should be entitled to administrative claims for rent and, if so, the value of those claims. The parties stipulated that the post-petition use of the land produced a tangible benefit to the estate and that the leases specified reasonable rental values for the properties. After a hearing, the bankruptcy court granted the landlords an administrative expense claim for the "reasonable rental value" of the property, calculating it on a per-diem basis by dividing the total annual rent due under each lease by 365. The bankruptcy court then multiplied the daily rent by the number of post-petition days the debtors used the leased land. The landlords appealed the bankruptcy court's calculation of the amount of the administrative claims.

The only issue on appeal concerning the administrative expense claims was whether they were valued correctly. The Bankruptcy Appellate Panel reversed, and remanded the case to the bankruptcy court to determine separately the rental value of the land during the growing season and during the non- growing season, and to apportion the total rent appropriately among the two seasons. On further appeal, the Eighth Circuit Court of Appeals agreed and held that the bankruptcy court erred by not recognizing that the majority of the land's economic benefit to the estate attached to the growing season.

*Burival*

In *Burival*, the debtors leased crop land from a landowner. The lease required semi-annual payments due on April 1 and December 1 of each year. In 2007, debtors paid the April 1 installment and later filed a Chapter 11 bankruptcy case. The bankruptcy was filed just two days before the December 1 installment was due. The debtors continued in possession and use of the land and ultimately rejected the lease on March 19, 2008. The landlord filed a request for an administrative claim in the full amount of the December 1 lease payment plus attorney fees and expenses. The bankruptcy court allowed the landlord an administrative claim for prorated annual rent for the

-3-

number of days elapsed post-petition until rejection, plus interest, fees, and expenses. The debtors appealed, arguing that the landlord's claim should be a general unsecured claim because the entire rental value of the property was for the growing season which ended pre-petition. The landlord cross-appealed and argued that she was entitled to an administrative claim in the amount of the full rental payment that came due post-petition/pre-rejection, plus interest, attorney fees and expenses, without reduction for the number of days elapsed prior to rejection.

The Bankruptcy Appellate Panel reversed, holding that § 365(d)(3) "is clear: the debtor shall timely perform all obligations arising from and after the order for relief until the lease is assumed or rejected." *Burival,* 409 B.R. 548, 553 (B.A.P. 8th Cir. 2009). As such, the B.A.P. determined that the debtor was required to make the full rental payment that came due December 1, 2007. *Id.* Further, since the obligations under § 365(d)(3) expressly apply "notwithstanding Section 503(b)(1)," the B.A.P. held that "the statute has already granted priority payment status to such obligations and eliminated the need for the landlord to prove any benefit to the bankruptcy estate to obtain such elevated status." *Id.* at 554-55. The B.A.P. reversed the bankruptcy court and held that the landlord was entitled to an administrative claim for the full rental payment that became due post-petition and pre-rejection.[4]

The debtors appealed to the Eighth Circuit Court of Appeals which affirmed the B.A.P., holding that: "Section 365(d)(3) is unambiguous and requires payment, in full, of post-petition, pre-rejection rent obligations in unexpired leases of nonresidential real property." *Burival v. Roehrich (In re Burival)*, 613 F.3d 810, 813 (8th Cir. 2010). As such, the Eighth Circuit Court of Appeals adopted a "billing date" approach, rejecting a proration theory, and ruled that the landlord was entitled to the full amount of the rent payment as an administrative expense under § 365(d)(3).

*Burival* is part of the majority approach to the treatment of administrative claims for unpaid rent.

> By imposing [the § 365(d)(3) requirement of timely performance of all lease obligations], and by explicitly providing that the obligation exists notwithstanding section 503(b)(1), Congress intended to abrogate the general "actual, necessary" requirement of section 503(b)(1). The more specific requirement of section 365(d)(3) is considered to override the more general requirement of section 503(b)(1). To hold otherwise, the majority view notes, would be to reward trustees for violating their duty to pay rent and would be contrary to the language and intent of section 365(d)(3).

4 *Collier on Bankruptcy* ¶ 503.06[6][c][iii][B] ((Richard Levin & Henry J. Sommer eds., 16th ed.) (footnotes omitted). In other words, if an administrative expense is established under § 365(d)(3),

---

[4]The B.A.P. did not address that portion of the bankruptcy court order allowing interest, attorney fees and expenses as part of the landlord's administrative claim. The B.A.P. majority also did not discuss *Wedemeier* except to note that it was decided under §503(b)(1), not § 365(d)(3).

it preempts § 503(b)(1) and the claimant need not *also* establish actual, necessary costs of preserving the estate. *See Burival*, 613 F.3d at 812-13.

Finally, the Eighth Circuit Court of Appeals addressed the debtor's argument that the landlord's administrative claim should not be allocated evenly throughout the year, relying on *Wedemeier*. The Court of Appeals rejected that argument, saying:

> Unlike this case, in *Wedemeier* no rent was due during the period between the filing for bankruptcy and the rejection of the lease. This explains why this court does not even cite § 365(d)(3) in *Wedemeier*. Section 365(d)(3) is unambiguous and requires payment, in full, of post-petition, pre-rejection rent obligations in unexpired leases of nonresidential real property. The *Wedemeier* case is irrelevant here.

*Burival,* 613 F. 3d at 813.

### *Discussion*

The Initial Legal Questions are discussed below, in the order presented in the Scheduling Order.

*1. Are the administrative expense claimants (as described in the Scheduling Order) entitled to immediate payment of allowed administrative expense claims other than as set forth in the Confirmation Order?*

Section 365(d)(3) requires "timely" performance of the debtor's post-petition lease obligations until rejection. The Debtors have acknowledged that they must timely pay rent and other obligations that become due (post-petition and pre-rejection) under the leases pursuant to the *Burival* billing date approach and assert that they have paid most of those obligations. Apparently, there are some limited instances where those obligations have not been paid.

To the Court's knowledge, the Confirmation Order did not effectuate any change to the requirements of § 365(d)(3). That section is unambiguous and requires timely payment of those post-petition lease obligations. Therefore, to the extent the administrative claims arise pursuant to § 365(d)(3), the landlords are entitled to immediate payment – particularly since all leases have now been rejected and the obligations that came due are already delinquent and untimely.

However, to the extent the administrative claims are pursuant to § 503(b)(1), the confirmed plan and confirmation order control the timing of payment. Nothing in § 503(b)(1) directs immediate payment. A claim under that section is simply entitled to priority in accordance with § 507(a)(2), and the confirmed plan addresses how such claims will be paid.

So, the answer to the first of the Initial Legal Issues is "yes" as to the § 365(d)(3) claims, and "no" as to the § 503(b)(1) claims.

*2. Are the landlords are entitled to administrative expense claims for stub rent?*

The primary question that arises under the circumstances of this case is whether stub rent – which is not entitled to § 365(d)(3) priority since the rent payment obligation came due pre-petition – is nevertheless entitled to § 503(b)(1) priority. No one disputes that all post-petition pre-rejection rent payments due February 1 and on the first of each subsequent month until lease rejection are § 365(d)(3) administrative expenses under *Burival*. The parties differ on the treatment of the stub rent.

In essence, the landlords argue that the *Burival* billing date approach applies only to rent payments that come payable post-petition and pre-rejection in order to fulfill a debtor's obligations under § 365(d)(3). They further argue that the billing date approach has no relevance to stub rent, which they believe is controlled by *Wedemeier* and § 503(b)(1).

The Debtors, on the other hand, assert that the landlords cannot have it both ways – using both a billing date approach and an accrual approach for different post-petition periods. They further assert that after *Burival's* endorsement of the billing date approach, *Wedemeier* is no longer applicable to any claims for rent during the post-petition period.

The parties brief a number of cases from other jurisdictions in which stub rent has been allowed as an administrative claim under § 503(b)(1) – *see, e.g. In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 816-818 (3d Cir. 2010) (holding that the existence of § 365(d)(3) does not preclude the use of § 503(b)(1) to establish an administrative expense claim for stub rent); *In re Imperial Beverage Group, LLC*, 457 B.R. 490 (Bankr. N.D. Tex. 2011) (same) – or disallowed, *see In re Oreck Corp.*, 506 B.R. 500 (Bankr. M.D. Tenn. 2014) (relying on Sixth Circuit precedent in finding that stub rent is not a § 365(d)(3) obligation and is also not an administrative claim under § 503(b)(1) since the obligation to pay is a pre-petition claim).

The landlords take the position that in the Eighth Circuit, *Wedemeier* governs stub rent and *Burival* governs post-petition lease payments, and the two are not inconsistent. Indeed, in *Wedemeier*, the leases were deemed rejected before any post-petition lease obligations became due, so the special priority granted under § 365(d)(3) was never triggered.

The Debtors believe that the landlords' interpretation of *Wedemeier* is more expansive than its actual holding. In that case, the parties stipulated that the leases specified reasonable rental values for the properties and that the estate received a tangible benefit from the use of the land. On summary judgment, the bankruptcy court ruled that the landlords were entitled to an administrative rent claim for the post- petition use of the land and calculated the value of that claim by prorating the lease payments on a daily basis. On appeal, the only issue was the calculation of the administrative claim amounts. No appeal was taken from the ruling that the landlords were entitled to an administrative claim in the first instance. Notwithstanding the limited issue on appeal regarding calculation of the administrative claim, however, the Eighth Circuit unequivocally held that "the reasonable rental value of the property used provides the measure of landlords' administrative claim for rent." *Wedemeier*, 237 F.3d at 931.

Another interesting aspect of *Wedemeier* is that it involved two leases. One lease term ran from January 16 to January 16, with rent due in equal installments on March 1 and December 1. The other lease ran from March 1 to March 1 of the following year, with unequal rent installments due on March 1 and November 15. On the bankruptcy petition date (June 8), debtor was delinquent on the March 1 obligation for the first lease, but had paid the March 1 installment under the second lease that commenced on that date. So, one lease had a pre-petition default and the other did not. In the one that did not have a pre-petition default, the debtor had arguably paid some rent that could be attributable to the post-petition period. The court of appeals did not discuss the potential effect of those facts on the calculation of the administrative claim, saying only that the case should be remanded "to the Bankruptcy Court to determine . . . a more precise measure of the 142-day period's economic value to the bankruptcy estate, using a calculation method which apportions the total rent between the growing season . . . and the non-growing season[.]" 237 F.3d at 942.

Notwithstanding those interesting aspects of *Wedemeier*, the bottom line is that its holding is binding on this Court.[5] In *Burival,* the Eighth Circuit did not overrule *Wedemeier* – it simply found it irrelevant to the facts of that case. In *Wedemeier*, the Eighth Circuit implicitly chose not to disturb the bankruptcy court's ruling that the landlord was entitled to an administrative claim under § 503(b)(1) for the post-petition use of the property to grow crops and expressly endorsed an apportionment method for allocating rent over the "growing season" as well as the number of days post-petition. In essence, *Wedemeier* is a stub rent case in that it dealt with rent for the post-petition period before a contractual rent payment became due.[6] Here, the Debtors retained and used the leased properties to continue to conduct business post-petition. The landlords were therefore forced into a transaction with the bankruptcy estate, and the transaction provided a benefit to the estate.

Under *Wedemeier*, the landlords are entitled to the "actual, necessary costs and expenses of preserving the estate" for the use of the stores during the post-petition period of January 16 through January 31, 2019. This amount remains to be determined. It may be equal to the prorated amount of the January lease obligations, or it may be some other figure if the Debtors object to that amount. The burden of proof under § 503(b)(1) is on the claimant seeking an administrative expense claim. *GE Capital Commercial, Inc. v. Sylva Corp. (In re Sylva Corp.)*, 519 B.R. 776, 782 (B.A.P. 8th Cir. 2014). It is the Court's understanding that the Scheduling Order provides a process for resolving the amount of the stub rent claims.

Accordingly, the answer to this second issue is "yes."

---

[5]As such, there is no reason to discuss the arguments of the parties based on cases from other jurisdictions.

[6]As the Eighth Circuit noted in *Burival*, the *Wedemeier* decision was irrelevant to the § 365(d)(3) analysis because *Wedemeier* did not involve post-petition, pre-rejection rent. 613 F.3d at 813. Also, it is worth noting that the Circuit Court's statement that "Section 365(d)(3) expressly preempts subsection 503(b)(1)," *id.* at 812, is valid when § 365(d)(3) governs the claim. However, that section is not at issue here in connection with a stub rent claim and the preemption argument does not apply.

*3. Are the landlords entitled to administrative expense claims for the prorated portion of base rent or additional rent items (e.g. taxes, utilities, etc.) billed or payable post-rejection but attributable to the post-petition/pre-rejection period?*

In addition to stub rent, the landlords also seek administrative claims for post-petition real estate taxes, maintenance, repair, and legal fee obligations which accrued during the period of post-petition/pre-rejection occupancy even though such items were not billed under the leases during that post-petition period prior to lease rejection. Clearly, under *Burival*, such charges would constitute administrative expenses if billed to the tenant prior to rejection. However, if such items were not billed before lease rejection, the provisions of § 365(d)(3) – which address post-petition lease obligations – preempt the application of § 503(b)(1) to such charges. In *Burival*, the Eighth Circuit made it clear that the billing date approach applies to such post-petition lease obligations. To hold otherwise would eviscerate the holding in *Burival* and would allow landlords to use both the accrual method and the billing date method to calculate their administrative claims for the same time period.

The Eighth Circuit Bankruptcy Appellate Panel even recognized that the application of the billing date approach could have consequences that are perceived as unfair to one side or the other and might result in mischief related to bankruptcy planning.[7] *Burival*, 406 B.R. at 553. However, the panel recognized "[t]hat is exactly what Congress did when it enacted section 365(d)(3) – it provided special treatment for non-residential landlords." *Id*. It further noted that, "Lease obligations are merely one more factor to consider in determining when to file a bankruptcy petition." *Id*. at 554.

Therefore, the answer is "no."

*4. Are the landlords entitled to administrative expense claims for additional rent items attributable to the pre-petition period that become due or payable post-rejection?*

No, see the answer to the prior question.

IT IS ORDERED: Debtors' First Omnibus Response and Objection to Requests for Allowance of Administrative Expenses (Fil. #1386) is granted in part and denied in part in accordance with the resolution of the Initial Legal Issues set forth above. This is not a final order for purposes of appeal since it is not a complete resolution of all of the issues raised in the claim objection and a procedure for resolution of the remaining issues is set forth in the Scheduling Order (Fil. #1656).

DATED: August 26, 2019.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

---

[7] The Eighth Circuit Court of Appeals did not discuss these factors in its *Burival* ruling on further appeal, but did affirm the B.A.P.

*Kevin McClelland
Evan Hollander
Katie Mason
Robert LeHane
R.J. Shortridge
Trev Peterson
United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.