IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK19-80064 |
| SPECIALTY RETAIL SHOPS HOLDING | ) | (Jointly Administered) |
| CORP., et al.[1], | ) | |
| | ) | CHAPTER 11 |
| Debtor(s). | ) | |

ORDER

This matter is before the court on the Request for Payment of Administrative Expense Claim filed by creditors McKesson Biologics and Plasma, LLC and McKesson Corporation, Inc. (Filing #782); Objection filed by Debtors (Filing #1386); Amended Objection filed by Debtors (Filing #1702), and Response to Amended Objection filed by McKesson Corporation, Inc. (Filing #1801). On June 25, 2019, the parties entered into a Stipulation for an Agreed Schedule Regarding McKesson Corporation's Asserted Administrative Claims (Filing #1623). A hearing was held on August 19, 2019, and evidence was received. Travis Bayer and Jenna Stupar appeared for Debtors. Jeffrey Garfinkle and Michael Whaley appeared for McKesson Biologics and Plasma, LLC and McKesson Corporation, Inc. (collectively "McKesson").

For the reasons that follow, McKesson's Request for Payment of Administrative Expense Claim is denied.

***Background***

The basic facts underlying McKesson's Request are not in dispute.

---

[1]The Debtors in these Chapter 11 cases are: Specialty Retail Shops Holding Corp.; Pamida Stores Operating Co., LLC; Pamida Transportation LLC; Penn-Daniels, LLC; Place's Associates' Expansion, LLC; Retained R/E SPE, LLC; ShopKo Finance, LLC; ShopKo Gift Card Co., LLC; ShopKo Holding Company, LLC; ShopKo Institutional Care Services Co., LLC; ShopKo Optical Manufacturing, LLC; ShopKo Properties, LLC; ShopKo Stores Operating Co., LLC; and SVS Trucking, LLC.

The cases have been procedurally consolidated and are being jointly administered under the case caption listed above.

1. On March 29, 2019, McKesson filed a Request for Payment of Administrative Claim (Filing #782). In that request, McKesson asserted that: "Pursuant to a settlement agreement between McKesson and Debtors, McKesson is entitled to superpriority [§] 507(b) administrative claim on account of its reclamation and/or marshalling rights, subject to certain conditions." McKesson asserted that it was filing the request to preserve its rights to an administrative claim if and when the conditions are met.

2. Prior to the commencement to this bankruptcy case, McKesson supplied most of the pharmaceutical goods sold by the retail pharmacies owned or operated by the Debtors.

3. McKesson's Proof of Claim (No. 1753) asserts that McKesson was owed $70,561,775.90 on the petition date. That claim contained three components – (a) a § 503(b)(9) claim for goods delivered to the Debtors in the 20 days prior to the petition date in the amount of $1,973,887.80; (b) a "Reclamation Claim" for goods sold to the Debtors in the 45 days prior to the petition date, less the amount of the § 503(b)(9) claim, in the amount of $36,190,535.08; and (c) a general unsecured claim for goods sold prior to 45 days before the petition date in the amount of $32,397,353.17. This order pertains only to the Reclamation Claim portion of McKesson's proof of claim.[2]

4. For purposes of this order there does not seem to be any dispute regarding the asserted amount of the Reclamation Claim. There also does not appear to be any dispute that McKesson complied with applicable state law in making a timely reclamation demand prior to bankruptcy filing. McKesson also filed a complaint in the State of Wisconsin Circuit Court seeking to reclaim the pharmaceutical goods. The state court denied a temporary restraining order but scheduled a hearing on McKesson's request for a preliminary injunction. This bankruptcy case was filed before that hearing could take place.

5. Debtors filed numerous first-day motions on the petition date, including a motion for entry of an order to establish bidding procedures for its pharmacy assets. That same day, McKesson objected to the Debtors' motion to sell the pharmacy assets as well as the Debtors' motion regarding post-petition financing, asserting that those transactions impaired McKesson's reclamation rights and marshaling rights. In addition, two days after the bankruptcy case was filed, McKesson filed a motion to transfer venue of this bankruptcy case to the Eastern District of Wisconsin.

6. McKesson and the Debtors entered into a Stipulation and Settlement Agreement dated as of January 25, 2019, which is attached to a Motion for Approval of Settlement (Filing #229). This Court granted the Motion to Approve the Settlement Agreement on March 15, 2019, (Filing #684).

---

[2]As part of the Settlement Agreement described *infra*, certain pharmaceutical goods were returned to McKesson. The parties are still in the process of reconciling the amount of credit to be applied to the § 503(b)(9) claim as a result of the returned goods. Any remaining dispute as to the amount, if any, of the § 503(b)(9) claim may be presented at a later time.

For purposes of this Order, the material terms of the Settlement Agreement are as follows:

1.      Upon execution of this Stipulation, McKesson will withdraw its objections to and will not contest entry of orders related to the DIP Motion and the Pharmacy Sale Motion, and McKesson shall withdraw the Venue Motion with prejudice.

2.      McKesson retains any rights it may have as of the date of this Stipulation, to the extent provided under the Bankruptcy Code or applicable law, to assert a claim and file a proof of claim for reclamation with respect to the Pharmaceutical Goods and marshaling rights, if any; provided that (a) any such claims and rights of McKesson shall be junior and subordinate in all respects to the liens, claims, and interests of the Agent and Lenders in the Collateral to the extent set forth in the Interim DIP Order or Final DIP Order; and (b) except as specifically set forth in paragraph 5, below, McKesson shall not assert (other than by filing a proof of claim) any such reclamation claims or marshalling rights, or seek adequate protection or a 507(b) Claim (as defined below) in connection with any such claims or rights, until the earlier of (i) the final indefeasible payment in full of all Obligations in accordance with the terms of the Loan Agreement and Interim DIP Order or Final DIP Order, as applicable; or (ii) the entry of final non-appealable orders (A) granting an Objection filed by any party other than McKesson in accordance with the Interim DIP Order or Final DIP Order that invalidates all liens of the Agent and Lenders on the Pharmaceutical Goods, and (B) denying any application of the Agent and Lenders for an administrative expense claim in connection with the Interim DIP Order or Final DIP Order, or in connection with the Loan Agreement or any funds advanced by the Lenders to the Debtors. For the avoidance of doubt, this Stipulation and Agreement shall not modify, impair, or waive an[y] arguments or defenses of Debtors or any other party in defense or opposition to any such claims or arguments of McKesson. For the further avoidance of doubt, McKesson is permitted to file a proof of claim against the Debtors' estates on account of its reclamation claims and marshaling rights.

3.      If (a) all Pre-Petition Obligations and Post-Petition Obligations (subject to Section 4.1 of the Interim DIP Order or Final DIP Order, as applicable) are indefeasibly paid in full in cash in accordance with the Loan Agreement, and (b) the Court enters a final order providing that, as of the Petition Date, McKesson held a valid enforceable reclamation claim with respect to the Pharmaceutical Goods and enforceable marshaling rights related to the reclaimed Pharmaceutical Goods, then McKesson shall receive a superpriority claim to the extent allowed under section 507(b) of the Bankruptcy Code for the value of the reclamation and marshaling claims (the "507(b) Claim"); provided that any such 507(b) Claim shall be junior and subordinate in all respects to any allowed administrative claim of the Agent and Lenders pursuant to the Interim DIP Order or Final DIP Order, or in connection with the Loan Agreement or any funds advanced by the Lenders to the Debtors.

7. On July 12, 2019, in accordance with the agreed schedule set forth in the stipulation between the parties, the Debtors filed their Amended Objection to McKesson's Request for Allowance of Administrative Expenses (Filing #1702) and McKesson filed its Response (Filing #1801).

### *Discussion*

McKesson asserts it is entitled to a superpriority administrative claim under Bankruptcy Code § 507(b) because it meets the requirements for such a claim under the Settlement Agreement. McKesson is correct that its entitlement to an administrative claim is governed by the Settlement Agreement. That is, McKesson bargained away its objections to various pending motions based on its reclamation demand in exchange for the protections of the Settlement Agreement. That agreement gave McKesson the opportunity to receive a superpriority administrative claim under § 507(b) if certain conditions are met. The conditions are that (a) all of the obligations owed to the DIP lenders are "indefeasibly paid in full in cash in accordance with the Loan Agreement," and (b) "the Court enters a final order providing that, as of the Petition Date, McKesson held a valid enforceable reclamation claim with respect to the Pharmaceutical Goods and enforceable marshaling rights related to the reclaimed Pharmaceutical Goods."

*1. Has McKesson met the requirement of paragraph 3 of the Settlement Agreement that all of the obligations owed to the DIP lenders are "indefeasibly paid in full in cash in accordance with the Loan Agreement"?*

Debtors argue that the DIP lenders will never be "indefeasibly paid in full in cash in accordance with the Loan Agreement" under the terms of the confirmed plan in this case. Specifically, under the confirmed plan the Lenders will not receive and have waived the right to collect approximately $96,000.00 of default interest. Therefore, according to the Debtors, McKesson cannot possibly meet the threshold requirement to assert a claim under the Settlement Agreement.

McKesson disagrees. It argues that the confirmed plan created a new contractual relationship that replaced the obligations of the Loan Agreement and the confirmed plan obligations have been (or will shortly be) paid in full. The Lenders accepted the plan treatment as an accord and satisfaction of the Loan Agreement obligations. Further, when the Lenders elected to forgo the right to charge and collect default interest, the default interest never became part of the obligations owed.

I tend to agree with McKesson on this issue. While Debtors may technically be correct that the DIP lenders will never be paid in full in accordance with the Loan Agreement, that argument seems to overlook the changes to the Loan Agreement obligations of the parties as a result of plan confirmation. Taken to the extreme, under the approach taken by the Debtors, the "paid in full" condition of the January 25, 2019, Settlement Agreement can never be met if the Debtors, months later, obtain confirmation of a plan where the Lenders waive the right to collect just $1.00 of interest obligations. That just doesn't seem right. I agree

that the Lenders have been or shortly will be paid in full in accordance with the Loan Agreement as amended.

Therefore, McKesson has met the first condition of paragraph 3 of the Settlement Agreement.

*2. Has McKesson met the second requirement of paragraph 3 of the Settlement Agreement that "as of the Petition Date, McKesson held a valid enforceable reclamation claim with respect to the Pharmaceutical Goods and enforceable marshaling rights related to the reclaimed Pharmaceutical Goods"?*

The first area of disagreement as to this condition is whether it requires McKesson to prove that it had *both* an enforceable reclamation claim *and* enforceable marshaling rights as of the petition date. McKesson urges that the word "and" as used in paragraph 3 of the Settlement Agreement between the references to a reclamation claim and marshaling rights should be interpreted disjunctively, as "or." In support, McKesson notes that throughout this case, it "has always asserted its reclamation claims and marshalling rights as separate and independent rights." McKesson's Resistance/Response to Amd. Obj., ¶ 50 (Filing #1801). I agree with that statement – McKesson has asserted those rights separately.

However, I disagree with McKesson's conclusion that by always asserting the two as separate rights, that somehow turns an "and" as used in the Settlement Agreement into an "or." In fact, it seems clear that because the two were asserted as separate rights, by using "and," the only rational conclusion is that the parties intended that McKesson must prove both to meet the express terms of the Settlement Agreement.

Turning next to whether "as of the Petition Date, McKesson held a valid enforceable reclamation claim with respect to the Pharmaceutical Goods," the parties again disagree. Debtors argue that since the current version of § 546(c) makes it clear that reclamation rights are subject to prior security interests, McKesson did not hold an "enforceable" reclamation claim as of the petition date. McKesson, on the other hand, argues that the statute merely subordinates its claim rather than extinguishes it.

Section 546(c) was modified with the BAPCPA amendments of 2005, and currently reads as follows:

> (1) Except as provided in subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods –

(A) not later than 45 days after the date of receipt of such goods by the debtor;
or

(B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

(2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

11 U.S.C. § 546(c).

In support of its position, McKesson relies upon Eighth Circuit precedent in *Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.)*, 964 F.2d 842 (8th Cir. 1992). However, that reliance is misplaced. Much time and analysis could be spent detailing the ruling in *Pester* and the history of and revisions to 11 U.S.C. § 546(c), but that is not necessary. Suffice it to say that even though *Pester* was based on an earlier version of the statute, the Circuit Court did come to the conclusion that reclamation rights protected by the statute were subordinate to prior secured liens – a conclusion that is expressly spelled out in the current version of the statute. Importantly, the *Pester* court held that the reclamation claim "would be valueless" if the prior secured lender's claim was satisfied by the reclaimed goods or their proceeds. *Id.* at 848. Then, the *Pester* court specifically found that under the confirmed plan, the prior secured creditors elected to release their security interests in the reclaimed goods in exchange for payments from sources other than the goods or their proceeds.[3]

Here, the Lenders did no such thing. In fact, the sale of the pharmacy assets was one of the first sources of payment toward the indebtedness owed to the Lenders and did not even come close to satisfying the total secured debt. Accordingly, *Pester*, which is based on a unique set of facts and an old version of the statute, does not support McKesson's position.

Further, the express language of § 546(c) shows that its intent is to establish limits on the avoidance powers in sections 544(a), 545, 547, and 549. There is nothing in the language of the statute to indicate that it was intended to create an administrative claim for reclaiming sellers, other than through the reference to § 503(b)(9). Since BAPCPA, the caselaw is fairly consistent in holding that reclaiming sellers are entitled to an administrative claim under 11 U.S.C. § 503(b)(9) (added by BAPCPA), but not under § 546(c), when a prior secured claim in excess of the value of the goods exists. I agree with Bankruptcy Judge Huennekens from the Eastern District of Virginia:

Consistent therewith, BAPCPA added additional language to § 546(c) confirming that reclamation rights in bankruptcy are "subject to the prior rights of a holder of a security

---

[3]Specifically, the Eighth Circuit determined that "the secured creditors released their superior liens and satisfied their claims from unrelated assets and income sources[.]" *Id.*

interest in such goods or the proceeds thereof." 11 U.S.C. § 546(c)(1). Accordingly, the Reclamation Goods sold by the Respondents to the Debtors became part of the Pre-petition Lenders' collateral and were not reclaimable at that time. The prior liens of the Pre-petition Lenders rendered the Reclamation Claims valueless at the commencement of these cases as anything other than general unsecured, non-priority claims. *In re Dana Corporation,* 367 B.R. 409, 421 (Bankr. S.D.N.Y. 2007).

*In re Circuit City Stores, Inc.*, 441 B.R. 496, 509 (Bankr. E.D. Va. 2010).

McKesson may be right that the current version of § 546(c) subordinates but does not "extinguish" reclamation rights that may exist. But, that isn't the point. The extinguishment of the reclamation rights happened when the goods were sold and no longer available for reclamation. Here, there is no doubt that the pharmacy sale proceeds (which included the reclamation goods) received by the estate shortly after the petition date did not satisfy the obligations owed to the Lenders. Therefore, the Reclamation Claims were valueless as of the Petition Date and McKesson had no "enforceable" reclamation rights at that time. On the Petition Date, McKesson could not have reclaimed the goods due to the prior secured interest of the Lenders. I agree with the Debtors that McKesson had no enforceable reclamation rights[4] on the Petition Date as required by paragraph 3 of the Settlement Agreement.

Even if an enforceable reclamation right did exist, McKesson has also failed to show that it had enforceable marshaling rights as of the Petition Date. McKesson bases its marshaling "right" on the following statement from the United States Supreme Court: "This Court has said that '[t]he equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds'" *Meyer v. United States*, 375 U.S. 233, 236 (1963) (quoting *Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456-57 (1925)). But that statement is taken somewhat out of context and the marshaling principle was further described in that same case as follows:

> In considering the relevance of the doctrine here it is well to remember that marshaling is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties.

375 U.S. at 237.

---

[4]Other than the right to an administrative claim under 11 U.S.C. § 503(b)(9), which is not contested.

Thus, the concept of marshaling assets is not a "right" that creditors such as McKesson automatically hold in their arsenal. Instead, it is an equitable doctrine that a court "may" impose when it can be equitably fashioned as to all. On the petition date in this case, it was impossible to say with any certainty that the Lenders would eventually be paid in full or how long such payment would take. What was certain was that the bankruptcy estate and the lenders had the opportunity to realize value from an early sale of the pharmacy assets as the value of the pharmacy assets (including the goods and the customer lists) would decrease as customers found alternatives to the Shopko pharmacies. Marshaling would have meant selling the pharmacy assets months later and only after the Lenders were paid in full (and *if* they were paid in full) from other assets. There is no question that such a process would have resulted in a substantially lower price for the pharmacy assets and McKesson has failed to show how that would be a remedy that is "equitably fashioned as to all."

McKesson argues that "[o]nce the lenders are paid in full, McKesson is entitled to assert its marshalling rights against the estates and any other party asserting an interest in the Reclamation Goods." McKesson's Resistance/Response to Amd. Obj., at ¶ 55 (Filing #1801). That would be an accurate statement if the goods still existed at the time the Lenders were paid in full; unfortunately for McKesson, the goods were long gone. McKesson has failed to show that it had enforceable marshaling rights as of the petition date.

Accordingly, McKesson has failed to meet the second condition of paragraph 3 of the Settlement Agreement.

*3. Does McKesson have any other right to an administrative claim?*

Apparently recognizing the possibility of that it was not entitled to an administrative claim under the terms of the Settlement Agreement, McKesson goes on to argue that even without the Settlement Agreement, it is entitled to a superpriority administrative expense claim under § 507(b) for secured creditors that had insufficient adequate protection. McKesson asserts that its lien rights in the Reclamation Goods were granted adequate protection via the Settlement Agreement and the court order approving the settlement.

McKesson's reclamation rights under the U.C.C. came into effect in late December 2018, more than two weeks prior to the petition date, when it formally demanded the return of goods delivered to the Debtors. The bankruptcy order for relief occurred before the state court could rule on McKesson's reclamation action. Under the Bankruptcy Code, McKesson's reclamation rights are subject to the prior rights of secured creditors.

McKesson is trying to shoehorn its claim into a section that does not fit. As explained above, the Lenders held prior rights in the pharmacy sale proceeds, including the Reclamation Goods, so McKesson's Reclamation Claims had no value as of the petition date. McKesson's claims were not secured by anything

at that point, and were not granted adequate protection under §§ 362, 363, or 364, as required by § 507(b).

McKesson further argues that it is entitled to a "garden variety" administrative claim under § 546(c) or § 503(b)(1)(A).

McKesson takes the position that the BAPCPA amendments to § 546(c), while radically altering how reclamation claims are treated in bankruptcy, should be interpreted to nevertheless maintain a jurisprudential throughline protecting reclaiming sellers. McKesson cites a post-BAPCPA case in which the reclaiming creditor was allowed over the debtor's objection to pursue a § 546(c) administrative claim for goods delivered to the debtor during the 21- to 45-day pre-petition window. *In re Reichhold Holdings US, Inc.*, 556 B.R. 107 (Bankr. D. Del. 2016). A key distinction between the relative positions of McKesson and the reclaiming creditor in *Reichhold* is that the prior liens in *Reichhold* were paid in full, leaving collateral available for the reclamation claims to attach to. McKesson – and the debtors – do not have that luxury here.

Likewise, McKesson cites *In re Professional Veterinary Prods., Ltd.*, 454 B.R. 479 (Bankr. D. Neb. 2011), for the proposition that a seller's reclamation rights may extend to assets other than the goods sold if the parties so agree. The *PVP* order denied summary judgment on the debtor's assertion that the seller had lost its reclamation rights, ruling that "the present version of § 546(c) does not provide for a lien on proceeds, but by using language in the sale order indicating that [the seller's] interest, if any, in the inventory would be transferred to the proceeds, the debtor opened the door to allowing for that possibility." *Id.* at 486. McKesson argues that the Pharmacy Sale Order in this case gives it the same protection as the seller in *PVP*. If there were any excess proceeds to which McKesson's reclamation rights could attach, McKesson's position may be valid. However, as explained previously, there are not. To McKesson's understandable consternation, § 546(c) under the circumstances of this case does not protect its reclamation claims and, in essence, gives it "a right without a remedy."

McKesson next argues that it should be allowed an administrative expense claim under § 503(b)(1)(A), which grants an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate[.]"

> One of the goals of Chapter 11 is to keep administrative costs to a minimum, accordingly § 503 is not intended to create a broad category of administrative expenses. In order to obtain administrative expense priority and qualify as "actual, necessary costs and expenses of preserving the estate" two elements must be satisfied: (1) it must have arisen from a transaction with the estate, and (2) it must have benefitted the estate in a demonstrable way.

*In re Double G Trucking of the Arlatex, Inc.*, 442 B.R. 684, 687 (Bankr. W.D. Ark. 2010) (citations omitted).

Here, McKesson engaged in pre-petition transactions with the Debtors. The goods at issue were delivered to the Debtors prior to the Petition Date and the creation of the bankruptcy estate. McKesson did not deliver any goods post-petition and the goods it delivered pre-petition were subject to the perfected secured claims of the Lenders. The valueless reclamation claims (*supra*) resulting from the pre-petition delivery of goods on credit do not morph into valuable post-petition administrative priority claims simply because the goods were sold – in this case, for substantially less than what was owed to secured creditors. McKesson is not entitled to a § 503(b)(1)(A) administrative claim.

Finally, McKesson challenges the Debtors' assertion that its claim, if any, should be disallowed under § 502(d)[5] unless and until McKesson pays Debtors' purported counterclaims against it. Since this Order pertains only to the Reclamation Claim set forth in McKesson's Request for Payment of Administrative Expense Claim (Fil. #782), and that Request is denied, there is no reason to address this argument.

### *Conclusion*

For the foregoing reasons, McKesson's Request for Payment of Administrative Expense Claim (Fil. #782) is denied. Because McKesson's Request pertained only to the Reclamation Claim portion of McKesson's proof of claim (and not its § 503(b)(9) claim or its general unsecured claim), all issues raised in the Request for Payment have been addressed and this Order *is* final for purposes of appeal.

Dated: August 30, 2019.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Travis Bayer
Jenna Stupar
*Jeffrey Garfinkle
*Michael Whaley
United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[5]That subsection states:

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.